Last case on for argument is Broker Genius v. Seat Scouts. Good afternoon, may it please the Court. My name is Chris Heisenberg for Appellant Seat Scouts and Drew Gaynor. The injunction in this case was issued based on a click-wrap agreement and the interpretation of that was clearly erroneous. The district court's interpretation itself also would run afoul of anti-competitive statutes and rules of the New York State. Are you arguing with any of the facts found by the court? Are you disputing any of the facts? Sorry, I'll put this better, at least from my perspective. Are you suggesting that any of the facts found by the court are clearly erroneous? We believe that the process used of not looking at or not filtering out evidence that is in the public domain and is not proprietary, that relying on that is erroneous. In other words, the six components of this technology that the court relied on for saying this was derived from there are ones that are clearly in the public realm and are things in which there is no proprietary interest by Broker Genius. Therefore, relying on those as your principle, if not exclusive... Not just they're not likely to succeed, but that as a matter of law, the requirement under the court's interpretation. So first, if the court is erroneous in not applying the Copyright 106 standards and saying a derivative work is just a derivative work within the meaning of a copyright law, copyright law has a very clear order for... Yeah, I understand that. This is a contract, a user contract. That's right, but the... Is it clearly erroneous, first of all? Don't we have to find it's clearly erroneous that your client signed on to that? The finding that your client signed on to that? No, because we're proceeding on this appeal on the basis that there is an agreement in place. Judge Stein writes that both sides asked him to use the Merriam-Webster definition of derived for the purpose of construing that provision. So whether or not on a clean record, the argument would have been that derivative work has a term of art copyright meaning, didn't both sides, including yours, tell him no, this ought to be defined in this way? No. And the corollary is after he said that, did you seek reconsideration on the ground that you had been misquoted when he said that both parties asked that the dictionary definition be used? Both parties did not. In fact, I think that same footnote that you're referring to, he clearly states that our argument proceeded both on a pre-hearing and post-hearing on the derivative work argument. In other words, that he in fact says, you know, that we argued it and said that prior art, for instance, would preclude as a matter of law. And we were going off of what the judge had ruled in the Zalta case just a week or two earlier than our trial, saying this is to be read in the context of a copyright statute. So our pre-hearing brief and our post-hearing brief expressly proceeded upon this request that he apply the copyright analysis. As to how copyright law could actually inform this, there is at this stage no copyright claim in the case? That's right. And this determination that the court was asked to make was not being made on the basis of any claim that the plaintiff's program was copyrightable at all. Is that right? Their program was actually the code itself is copyrighted. The reason why the copyright claim was withdrawn by them, they did originally proceed on that, was because their claim would fail under that copyright process. No doubt it would. So at this point we're operating on the assumption that there is no copyright claim. There is no claim before the court, actually, that any element of this program is copyrightable. That's right. So how can, you know, if you ask someone, if I hand someone a text and I say, well, you're allowed to use this text for your purposes, but you can't make any derivative work from that. And the work in the first place is not copyrightable for any of a hundred reasons. How would one even go about asking what could it mean to say a derivative work as informed by the copyright law if what I'm handing you isn't copyrightable in the first place? There would be no elements. There would be no such thing as a derivative work then. Isn't that right? I'm sorry. I may have misunderstood your question earlier in responding to it. There clearly are elements of their claim that are subject to a copyright. We can't simply go and take their- But this claim isn't. In other words, the contract claim, the question is what does the contract mean by a derivative work? And suppose the contract did not refer to a copyrightable element at all. Does the mere use of the term derivative work mean there can't be a derivative work because that's a copyright term and you haven't got something copyrightable? No. Under a contract analysis, one looks at what a reasonable reader would view. They're the ones who drafted this. They put it in. It's a standard form, actually. And someone looking at this and saying, what am I prohibited from this clause from doing, would, as Judge Stein did in the first case, in the Zalta case, look at this and say, all of these things are copyright terms of art. And if you plug it into a computer, what comes up is that derivative work is something in the copyright context. And so someone looking at this would say, ah, the copyright holder here has the right to control whether or not to grant me the right to create a derivative work. And in doing so, what they're saying in this license is, no, you don't have that right to create a derivative work, as it's used in the copyright context. What the judge did in taking out of the copyright context is also something that, even if you look at it just in terms of using the words derivative, derived from, still has to take out and filter out items that are in the public realm. If something is not a property right that Broker Genius has, if something has been put into the public realm, and here we have the patent, we have the judge determining that this is not a trade secret, everybody else in the world would have the ability and the right to do this, except for Mr. Gaynor. Isn't that true of any contract? That anyone else in the world can do X, but I've promised not to do X. Therefore, I have an obligation that everybody else in the world doesn't have. That's why this is not a claim to a monopoly in the idea. If I tell you, and this happens all the time, I think, in development of computer programs and all kinds of other things, I say to you, look, I'll share with you what I've got. But you have to promise me you're not going to use that to create some new work based on my idea. You're obligated not to make anything based on my idea, even if I could not claim against the rest of the world a copyright in the idea. But if that idea has already been made public, Ruckelshaus says you have no particular property right in it. It has been extinguished. I don't have a property right. I'm not asking for a property right. I'm asking for a contract right. I won't let you be a customer unless you promise not to use my idea to make a product of your own. Are you saying that's a violation of public policy to form a contract like that? Well, this Court has said that in the Crye v. Duro case last year, which says exactly that, that a former licensee who agrees not to then make this sort of good going forward, that that is an unreasonable restriction, that because the contract can restrict you from using proprietary information, of course, that's a standard non-competition provision. But if it goes beyond that and says, I'm also going to try to protect stuff that's in the public realm that I have no property right in, then that is an unreasonable restriction that the restriction, Crye v. Duro, 689F Appendix 104, says, looking to the New York law, you have to have a covenant protecting a legitimate business interest, which here, if the rest of the world can do this, and if they have created a patent and published it, which, as the Court knows, creates the enablement saying anyone else can build this using this blueprint, and then it also would have to be reasonable in terms of its time and its scope. This here is a lifelong ban, apparently, on Mr. Gaynor from using something that is in, that they've published a patent on that says you can do this, and which the judge held is not a trade secret that any user could go and publish to the world. So what you're saying is this would be an unreasonable non-compete clause, in effect. Was that an argument that was made in the district court? Our answer does say that this would be an unconscionable interpretation. However, we were dealing with an interpretation, and, in fact, on appeal here, they've recognized this and have scaled back their argument on page 48. Their claim is simply that this should be interpreted to prevent the copying of proprietary technology. So, in other words, they aren't claiming that this even extends to non-proprietary technology because they know that would go across the boundary into a non-compete. So the question then is, is this proprietary technology? And I think on our brief on page 14, we have a chart that shows exactly that every single component that the district court cited is something that is in the public domain, and the six widgets, the architecture, and the scalability, all of those components are things that in 2015 were put into the public domain, and according to the Ruckelshaus decision, their property interest in that has been extinguished. And according to the federal court saying that that's part of the patent bargain, that when you say this is how you do it, these are the components, this is the enablement clause of how you go about in building it, the rest of the world could do it. And if you interpret this agreement not to be restricted to their proprietary technology, as they're now trying to argue, but to expand beyond that, to include stuff that is obvious, that is not proprietary, then that runs afoul of the restrictions on competition. Thank you. Excuse me. You've reserved two minutes for rebuttal, Mr. Heisenberg. Good afternoon, Your Honor. May it please the Court, my name is Veronica Mullaly-Munoz, and I represent Broker Genius. The Court is exactly correct. This is a contract case. It's a contract with unambiguous language, both sides agreed that. It was voluntarily entered into, and Mr. Gaynor agreed not to make a derivative product of Broker Genius' autopricer in order to get access to that product. If he didn't agree to that, he wasn't going to get access. But that begs the question of what he's agreeing to. What of the argument that at the time he clicked through it, before copyright claims had been made and disposed of in this litigation, the word derivative work had a term of art meaning, and its surrounding terms are also familiar from the world of copyright? That's not true. There is no term of art meaning here. When Judge Stein looked at this language in the terms of use in the Zolta case, which was a trade secret case, he was looking to see whether that clause provided a confidentiality requirement. He did not import the copyright law to supplant contract law. He didn't implant the copyright law to interpret this contract. And he makes that clear in footnote 14 in the preliminary injunction order. The question is not really what Judge Stein did, but just as an original matter, if you looked at that clause. One way of looking at it is to use the dictionary definition, the Merriam-Webster. Another way would be to say that the clause takes on meaning from the surrounding words. And I guess the question is, as an original matter, why is your position more right? Well, for the reason that that's not the only clause that talks about you can't make a derivative work. When Mr. Geiner signed on to this contract, there was an ownership of data, content, and grant of conditional license section. One part of that says you agree that you will not otherwise attempt to derive any source code or underlying ideas or algorithms of any part of this site or the apps. Derive in that sense is picking up on that other derived language. Yes. And then it goes on to say you may not reproduce, modify, display, publicly perform, distribute, or create derivative works of the site or apps or the content. Judge Stein focused on the derivative works language because that's what defendants cling to. However, both sides put forward the Webster Dictionary understanding or definition of derive. So your adversary appears to have disputed that contention. It's undisputed. And Judge Stein cites to the experts Dr. Koskinen defined derived as something that originates from something else. And defendant's expert, Ms. Martin, defined derived as something that originates from something else. The truth is here the copyright arguments, the patent arguments are a diversion. Mr. Heisenberg tells you that everything that Broker Genius claims as proprietary technology is in the public domain. That is not true. The components that are in the software, the individual components that are put together to try to make this innovative auto-pricer product, we are not claiming that they're not in the public domain. We are not saying they're patentable, copyrightable, trade secret. What we are saying is the combination, the special combination of those components results in a very special, specific architecture that allows this product to have a unique user interface and user experience. Putting that simplistically for my simple mind, there are a number of things out there in the public domain, but what is being protected here is the way that those have been put together in order to achieve a final product. That's right. Broker Genius spent $4 million and many, many years developing what's known as requirements engineering, where you put it together one way, you get customer feedback. It's a trial and error process. It's a roadmap to get the optimized product. When Mr. Gaynor used the auto-pricer and stopped using it, he was able to create his product like that. No requirements engineering. No trial and error. He took the roadmap. That roadmap is proprietary information to Broker Genius, and there's a Supreme Court case, Aronson v. Quickpoint Pencil Company at 440 U.S. 257, 1979, and there the court refused to supplant contract law with patent law. There was an agreement between a patent applicant and somebody who wanted to license the patent, and the agreement said the licensee would pay 5% royalty if the patent issued within five years and 2.5% if it didn't issue. Well, as it turned out, the patent didn't issue, and the Supreme Court said that the licensee had to continue paying the royalty, and what they said was enforcement of these contractual obligations freely undertaken in arm's-length negotiation and with no fixed reliance on a patent or a probable grant will, and this is important because as it stands, Broker Genius's proprietary technology may not be considered patentable subject matter. That doesn't mean that Broker Genius can't have an interest in that. So the court says with no fixed reliance on a patent or probable patent grant will encourage invention in areas where patent law does not reach and will prompt the independent innovator to proceed with the discovery and exploitation of his invention. Competition is fostered, and the public is not deprived of the use of valuable, if not quite patentable, invention. There is nothing anti-competitive about Broker Genius having a terms of use to protect its proprietary technology. It's not stopping somebody else make their own combination of these components. In fact, Broker Genius has sued three companies, each one a former customer who copied their product. Two of them had freely admitted and accepted a permanent injunction, admitted that they had copied. The third is SeedScouts. Broker Genius has never brought a suit against any other company using another type of pricing tool. Everybody is free to use these components. What you're not free to do is agree not to make a derivative work. Sign on, get access, and then go ahead and copy the work. Thank you. Thank you, Ms. Munoz. Mr. Heisenberg. Very briefly, the argument that the unique components are a trade secret was dispensed by the judge in Zalta's decision. He said users are free to take their particular user interface and broadcast it to the world. And so the argument that somehow there is some secret that Mr. Gaynor gained access to that he otherwise would not have been able to, that is a trade secret and is proprietary, is just incorrect. And Judge Stein held that it was incorrect. The other thing that runs counter to the argument about this being proprietary or somehow the unique combination argument is it was presented exactly to the patent office. On page 11 through 13 of our reply brief, we present side by side each component that the judge identified in his decision here as a basis for what was copied, and the corresponding part in the patent office which goes through in greater detail the exact unique combination of these things, of how you do this. And the ultimate conclusion of the patent office, the trained examiners, somebody who deals with this technology all the time, is that this was obvious. It says simply using a process that has been used by ticket brokers all the time is not something that makes it, you know, is obvious. And the finding of obviousness separate from the disclosures later on, you can have a right and then lose it, but an obviousness determination precludes as a matter of lie claim of derivation. Is it correct that your expert defined derivative as originating from something else? That was in response, yes, to — it was a rebuttal report where their expert had defined it. That your expert used that formulation? Yes. She was addressing their argument about derivation and said for purposes of this, I will look at this under the definition of derivation. Our briefs, however, as I said, if you go back, are chapter and verse on the reasonable interpretation, as the judge found that if someone looks at this and says what does derivative works mean, at a minimum they would say it's in the context of what does a derivative work in the copyright, means I can't copy the site. But otherwise, even under the word derive or derive from, any law requires you to filter out stuff that's in the public domain because they don't have the right to that anymore. Could you just tell us what is the state of play in the district court now? Is there a trial scheduled or what's happening? Yes. We have a trial scheduled for December 17th, and we are still enjoined at this point and out of business. And is that a bench trial because it's basically for an injunction or is there more to it than that? No, no. This is a full jury trial on the contract claim. And the definition of that term is settled in that trial from the ruling on the PI? Right. Unless the court weighs in on this, we would presume that the judge would give a jury instruction based on his interpretation of what that clause means. And again, just so I can note that, the date of the trial is December 17th? December 17th. We are mindful because we took this case on short notice that we will try to get you an expedited determination. Thank you very much. Thank you. Thank you both. We'll reserve decision. The final case on the calendar is Pappas v. Morris, which is on submission. So I will ask the clerk please to adjourn the court. Court is adjourned.